Pennsylvania Labor Relations Board, Appellant,
*v*. Friedberg.

Argued November 14, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

*Thomas D. McBride,* Attorney General, with him *James F. Wildeman* and *Herbert N. Shenkin,* Assistant Attorneys General, for Pennsylvania Labor Relations Board, appellant.

*Arthur Berman,* with him *Samuel Handler,* and *Compton, Handler & Berman,* for appellee.

OPINION BY MR. JUSTICE COHEN, March 16, 1959:

The appeals herein were taken by the Pennsylvania Labor Relations Board from a decision of the Court of Common Pleas of Dauphin County setting aside the orders made by the Board in these two companion cases.

In the first case the Board, after a hearing and an election, made an order on November 21, 1957 certifying The Building Service Employees International Union Local No. 363, AFL-CIO as the exclusive representative of the employees of the appellees, Irving J. Friedberg, Mollye Friedberg and Lee B. Friedberg trading as Harrisburg Window Cleaning Company (hereinafter referred to as "employer"). The second case involved a decision and order of the Board which found that the same employer engaged in unfair labor practices within the meaning of the Pennsylvania Labor Relations Act of June 1, 1937, P.L. 1168, 43 P.S.

§211.1 *et seq.*, in the discharge of one of its employees. Following these decisions, the employer filed petitions for review of the Board's final orders in the Court of Common Pleas of Dauphin County. The court held that the Board had no jurisdiction over the employer and set aside the orders.

The facts are not in dispute. Employer is engaged in the furnishing of local window cleaning services in Harrisburg, Pennsylvania and employs five persons to do this work. Its total business for the year 1956 (the last full year prior to the institution of these proceedings) amounted to $40,165.70, of which $12,462.00 represented services performed for enterprises engaged in commerce within the meaning of the National Labor Relations Act and $28,003.70 represented services performed for purely intrastate customers. Of their customers engaged in interstate commerce only a few were in the production of goods or in the transportation industry. The others were mostly retail establishments.

The question presented by these appeals is whether the Pennsylvania Labor Relations Board has jurisdiction over this employer.

After recent decisions by the United States Supreme Court, it is unquestionable that where the activity of an employer affects or may affect commerce, State Labor Relations Boards do not have jurisdiction over a labor dispute. The field is pre-empted by the Federal Government which invested the National Labor Relations Board with exclusive jurisdiction. The exclusiveness exists even though the National Board refused to assert its jurisdiction because of its self-imposed standards. *Guss v. Utah Labor Relations Board,* 353 U.S. 1 (1957), which has been followed by this Court in *Hodges Bedding Co. v. Pennsylvania Labor Relations Board,* 388 Pa. 333, 131 A. 2d 93 (1957).

The term affecting commerce is defined as "in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." 61 Stat. 137 (1947), 29 U.S.C. §152(7) (1952), 29 U.S.C.A. §152(7).

The question of whether a local employer, though not himself engaged in interstate commerce, who provides window cleaning services to buildings which house businesses engaged in such commerce is included within the commerce power of the Federal Government had been decided in the affirmative in the only case involving this question by the United States Supreme Court. In *Martino v. Michigan Window Cleaning Co.,* 327 U.S. 173 (1946) the Court held that a window cleaning company's local intrastate work of cleaning windows on premises used by its customers in the production of goods for interstate commerce was an occupation *necessary* to the *production of goods* produced in those plants. This was a case interpreting the Fair Labor Standards Act of 1938 and the question was whether the employee of the window cleaner was working in a "process or occupation necessary to the production" of goods for interstate commerce. In 1949 Congress saw fit to amend the Fair Labor Standards Act so as to exclude local window cleaners from its coverage, 63 Stat. 911 (1949), 29 U.S.C. §203(j) (1952), 29 U.S.C.A. §203(j). In the House Report on this amendment it was specifically pointed out that the result in the *Martino* case provided coverage by the Act for employees in occupations which were *too remote* and *merely incidental to interstate commerce,* H.R. Rept. No. 1453, 81st. Cong., 1st. Sess., 14-15 (1949). The situation we are faced with here is also distinguishable from that in *Kirschbaum v. Walling,* 316 U.S. 517 (1942) and *Borden Co. v. Borella,* 325 U.S. 679 (1945).

These were cases which arose under the Fair Labor Standards Act and the employees were engaged in general maintenance work, including operating elevators and making repairs, as opposed to only window cleaning. There is no other *judicial* authority for the proposition that this type of activity is included as interstate commerce. However, in 1955 the National Labor Relations Board without citing any authority decided that window cleaning for commercial and industrial establishments that were engaged in commerce would include the employer business as interstate commerce, *City Window Cleaning Co.*, 114 NLRB 906 (1955). It must be borne in mind that in this case the jurisdictional amount found by the Board was more than their established minimum. Although there is no doubt that the coverage of the National Labor Relations Act is considerably broader than the Fair Labor Standards Act, the *Martino* case and subsequent Congressional action taken as a result thereof points out the remoteness of the effect that window cleaning has on interstate commerce. This being the case there seems to be a real question as to whether or not the activity of the employer is such that "affects commerce," but, even accepting the proposition that window cleaning of buildings involved in interstate commerce is an activity covered by the National Labor Relations Act, we still have the question of whether or not this particular employer's activity is not excluded for another reason.

While recognizing the broad grant of power under the NLRA, the United States Supreme Court has held that this jurisdiction is not without some limitation. Justice STONE in *NLRB v. Fainblatt*, 306 U.S. 601 (1939) said at 607: ". . . Examining the Act in the light of its purpose and of the circumstances in which it must be applied we can perceive no basis for infer-

ring any intention of Congress to make the operation of the Act depend on any particular volume of commerce affected *more than that to which courts would apply the maxim de minimis."* (Emphasis supplied).

The *de minimis* doctrine has been adverted to on several occasions by the United States Supreme Court although it has not been called upon to stake out this lower boundary. *NLRB v. Denver Building & Construction Trades Council,* 341 U.S. 675 (1951) ; *Amalgamated Meat Cutters and Butcher Workmen of North America, Local No. 427, AFL et al. v. Fairlawn Meats, Inc.,* 353 U.S. 20 (1957).

The court has never confirmed the jurisdiction of the National Labor Relations Board over an enterprise as small as the one involved in this case. We are not concerned here with the production of goods by the employer, but rather his activity was a service. All the cases in which the theory of *de minimis* has been asserted involved a question of amounts of goods produced or purchased. Now we have a case of a local window cleaner whose total yearly business is $40,-165.70 of which only $12,462.00 even remotely has anything to do with interstate commerce. It is possible to say that every purely local business has some no matter how slight an effect on interstate commerce. But, as Mr. Justice FRANKFURTER said in *Polish National Alliance v. National Labor Relations Board,* 322 U.S. 643 (1944), at 650: "Scholastic reasoning may prove that no activity is isolated within the boundaries of a single State; but that cannot justify absorption of legislative power by the United States over every activity." The present case would seem to be one to which Justice FRANKFURTER was alluding. Here the business of the employer is so small, so trivial, and so insignificant that if the courts do not characterize this business as *de minimis* then that doctrine has no meaning.

Also, if we were to uphold the decision of the lower court, this case would then be in what Chief Justice WARREN in the *Guss* case, supra, characterized as "no man's land". We would have a business whose volume would not qualify under the jurisdictional minima established by the National Labor Relations Board and yet be entirely unregulated since the State Board could not exercise any jurisdiction over it.

The appellee also argued that the *de minimis* doctrine applies to the volume of commerce that is affected and since the employer washes the windows of a building occupied by the Pennsylvania Railroad and several other companies engaged in interstate transportation, that this is not *de minimis* since their volume of business greatly exceeds anything that could even be thought of to be trifles. This is not a valid argument. As has been pointed out before, the employer's business was remote and incidental. The appellees urge us to envision a situation where the interstate transportation carried on by these companies is simultaneously tied up because of a labor dispute with the instant employer who is an independent contractor. The only situation which could bring about this type of tie-up would be one in which the employer, having a disagreement with his unionized employees, employs nonunion men to perform the work on these various companies' windows and the employees in turn were to picket the jobs. Aside from this possibility being very remote, there need not be any tie-up because there is nothing in the record which shows that the railroad and the other companies could not engage another window cleaner contractor, thereby ending any right of employer's union employees to picket these areas. Even so, labor disputes are not interminable; usually they are resolved within a comparatively short time. The effect that uncleaned windows will have on com-

merce pending settlement of the dispute is at most negligible.

As was stated before, since any local business could be said to have an *effect on commerce,* in order to give more than mere lip service to the *de minimis* doctrine a line must be drawn somewhere. In this case the type of business and the facts are such as to clearly indicate that the National Labor Relations Board does not have jurisdiction and hence the Pennsylvania Labor Relations Board was within its authority in making its ruling and orders.

Orders reversed.

Mr. Justice BELL and Mr. Justice BENJAMIN R. JONES concur in the result.

Mr. Justice MCBRIDE took no part in the consideration or decision of this case.